**FIRST NAT. BANK OF QUINLAN v. DONOHOE. (No. 3359.)**

Court of Civil Appeals of Texas. Texarkana. March 21, 1927.

Rehearing Denied March 31, 1927.

**1. Appeal and error ☞1010(1)—Judgment Involving fact findings, supported by evidence, must be sustained.**

A judgment involving findings of fact, which are supported by evidence must be sustained.

**2. Chattel mortgages ☞68—Judgment for plaintiff, in action for conversion, must be affirmed, where evidence of chattel mortgage to value of property was not conclusive.**

Judgment for plaintiff, in action for conversion of cotton, must be affirmed, in absence of conclusive evidence that defendant had valid chattel mortgage on all cotton to extent of its value, especially where deposit with clerk of proceeds of sale thereof was in nature of tender of such sum in satisfaction of plaintiff's claim.

**3. Appeal and error ☞672—Judgment for more than amount sued for its ordinarily fundamental error.**

Ordinarily, judgment for more than amount of damages pleaded by plaintiff is ordinarily fundamentally erroneous.

**4. Damages ☞40(2)—Sales profits plaintiff would have received had defendant financed new business as agreed held purely speculative and anticipatory.**

Profits which plaintiff would have received from sale of hay and corn had defendant furnished working capital for new feed business as agreed *held* not recoverable, being purely speculative and anticipatory.

Appeal from District Court, Hunt County; Newman Phillips, Judge.

Action by E. D. Donohoe against the First National Bank of Quinlan. Judgment for plaintiff, and defendant appeals. Modified, and affirmed as modified.

The appellee sued the appellant for damages, as set out below, and recovered judgment against it. The appellant demurred to the petition, and pleaded a general denial.

The contract as alleged by appellee, and upon which he was awarded damages, is as follows:

"(3) Plaintiff shows that on or about the 1st day of October, 1923, he and defendant entered into a contract as follows:

"(4) Plaintiff agreed to and did purchase from defendant one gristmill, situated in Quinlan, for which he agreed to pay $1,000, $100 to be paid in cash, and which was paid, and the remainder to be secured by notes, payable as follows: $100 payable January 1, 1924, $150 payable April 1, 1924, and $600 October 1, 1924. Plaintiff shows that as the principal inducement for him to purchase said mill at said price and terms, and as a part of the consideration for said purchase, the defendant contracted and agreed with plaintiff to loan him money for a period of one year, begining October 1, 1923, with which to buy corn, oats, and hay to enable him to go into and conduct what is known as a feed business, that it, to buy and sell feed for profit, in the town of Quinlan, Tex.

"(5) It was understood that the plaintiff in purchasing said mill would not be able to meet the payments above specified, unless he would also be able to go into the said seed business, and the said defendant would furnish him money and extend him a line of credit whereby the plaintiff could borrow the money necessary, from defendant, with which to pay for shipments (purchased) of corn, oats, and hay, together with the freight charges; that as a part of the consideration in purchasing said mill defendant agreed to supply plaintiff all the money necessary to purchase corn, oats, and hay for said feed business, to pay the notes due on said mill.

"(7) Plaintiff shows that if defendant had furnished the necessary capital with which to

purchase feed aforesaid, he could and would have realized for the year 1924, over and above all expenses, a profit of at least $100 per month, and this the defendant knew at the time it made the agreement to furnish plaintiff said capital."

The officers of the bank denied making the alleged contract to lend plaintiff any unlimited sum of money. The plaintiff testified to the contract alleged. The bank did lend the plaintiff about $700, on a note, to buy products for his gristmill. The jury answered "Yes" to the following question:

"Did the officers of the bank, in selling the mill and as an inducement to plaintiff to purchase it, promise plaintiff that the bank would supply him with all the money necessary for him to purchase corn, oats, and hay for his feed business for one year from the date of the purchase of said gristmill?"

The "feed business," as explained, was to buy in wholesale lots and to sell at retail in ordinary course of business "corn, oats, hay, and cottonseed meal and hulls." A portion of the corn was to be ground into meal, through the gristmill, and sold generally. The business was entirely a new enterprise embarked in by appellee at the time of the alleged contract and purchase of the gristmill. His purpose was to buy the products by carload lots and then sell them to the public generally in the ordinary course of business at retail prices, at a profit as market prices might permit. The questions were asked appellee: Do you know about how much corn, hay, oats, and feed it would require to run and conduct a feed store or business for twelve months?" Answer: "No, sir." Further: "Have you an idea about how much?" Answer: "I have no idea how much." Continuing: "What was the extent as to marketing of the feed business there at Quinlan?" Answer: "I can't answer to what extent." Plaintiff further testified:

"The corn and oat business plays out at the time when threshing time starts; the country people quit buying feed then. The business commences in October, and runs until threshing time—about seven months.

"Q. How many tons of hay and how much corn could you have sold in that time if they (the bank) had furnished you the money to pay for feed and for the freight thereon? How much could you have sold, do you think? Answer: I think I would be safe in saying I could have handled six cars of corn and ten cars of hay in the six months (from October)."

Further:

"I would have made $2 a ton on the hay, and on the corn from 12½ to 20 cents a bushel profit."

The evidence does not appear any more definitely as to the enterprise, beyond mere anticipation. The jury found that appellee suffered the loss of $1,500 as net profits

"which he would have received from the sale of such feed" had the bank furnished the working capital as agreed. The court accordingly entered judgment for that amount.

The appellee further alleged in the petition, as ground for suit, the conversion by the bank of 13 bales of cotton. This matter was not submitted to the jury, but seems to have been left for decision by the court. All that appears in the record in that respect is what is shown in the following portion of the judgment:

"Further, it appearing to the court that the plaintiff was the owner and in possession of 13 bales of cotton and that the defendant took possession of and unlawfully withholds possession of said cotton, and it further appearing to the court that while said cotton was being so held the cotton was sold by agreement of the parties and certain expenses and rent deducted, leaving the sum of $632.87, and which sum was by agreement of the parties deposited with the registrar of this court to be held in place and stead of the 13 bales of cotton, it is therefore ordered and decreed by the court that the plaintiff do have and recover of the defendant bank the sum of $632.87 with interest thereon from this date at the rate of 6 per centum per annum," etc.

The bank seems to have claimed a mortgage on all the cotton to the value thereof, but there is no mortgage in the record. The plaintiff testified to the effect that there was never a valid and subsisting mortgage given on the cotton. The court's findings as recited in the judgment go to sustain the plaintiff's contention.

H. L. Carpenter, of Greenville, for appellant.

B. Q. Evans, of Greenville, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The controversy respecting the alleged conversion of 13 bales of cotton seems to have been left to the court, instead of the jury, for decision. No request was made to have the jury decide it. As the court's judgment involves the finding of all issues in that respect in favor of appellant, it would have to be sustained, since there is evidence to support the court's findings of fact therein recited. The appellant seems to urge that the evidence admittedly shows a valid chattel mortgage in its favor on all the cotton, and to the extent of unpaid indebtedness to its value. We fail to find such conclusive evidence in the record. And, further, as the record seems to reflect, the deposit with the clerk seems to have been in the nature of a tender into court of that sum in satisfaction of the appellee's claim on the cotton. Either of the grounds stated above would require the affirmance of the court's judgment as to the said claim.

[3, 4] The appellee pleaded that he sustained "damages in the sum of $1,200 that he could and would have made above all

expenses in the feed business, by reason of such failure and breach of agreement" on the part of the bank in failing to provide working capital for the enterprise. Therefore a judgment for $1,500, as entered, would be, as is urged, ordinarily fundamentally erroneous in amount. But that is unimportant in view of our conclusion that appellant's contention should be sustained that the appellee cannot recover at all on the contract alleged or upon the evidence offered in respect thereto. The contract shows and the evidence establishes that it was an agreement to finance a new "feed business" as such, and not an established commercial business; and the profits the plaintiff claims would have resulted from the act of the bank had it financed the enterprise as agreed are purely speculative and anticipatory, and incapable of recovery. 1 Sutherland on Damages (3d Ed.) § 67; 17 C. J. § 117, p. 795; 8 R. C. L. § 69, at page 511; Fraser v. Milling & Smelter Co., 9 Tex. Civ. App. 210, 28 S. W. 714; Walter Box Co v. Blackburn (Tex. Civ. App.) 157 S. W. 220. The cases cited are not applicable of National Bank of Cleburne v. M. M. Pittman Roller Mill (Tex. Com. App.) 265 S. W. 1024, 36 A. L. R. 1405; Norris Lumber Co v. Harris (Tex. Civ. App.) 177 S. W. 515; Grand Prairie Gravel Co. v. Wills Co. (Tex. Civ. App.) 188 S. W. 680; and other similar cases.

The judgment is modified so as to deny a recovery for the $1,500, and as so modified is in all things affirmed. The cost of appeal to be taxed against appellee.